Filed 6/26/14  P. v. Wanamaker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THOMAS ROBERT WANAMAKER,<br><br>    Defendant and Appellant. | C071060<br><br>(Super. Ct. No. 10F04690) |

Appointed counsel for defendant Thomas Robert Wanamaker asked this court to review the record to determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Finding no arguable error that would result in a disposition more favorable to defendant, we will affirm the judgment.

I

On July 18, 2010, law enforcement responded to a report of a shooting in Citrus Heights.  Officers arrived to find a Chevy Lumina parked at a Shell gas station.  The Chevy had three bullet holes in it and officers found broken glass and two shell casings in a nearby Chuck E. Cheese parking lot.

1

Stephanie Elliott, the driver of the Chevy, told the officers there were five passengers in her car, including a three-year-old child and a man named Thomas Hilton. Elliott informed the officers that, earlier, she drove Hilton and the other passengers to a nearby liquor store so that Hilton could buy cigarettes. When Hilton got out of the Chevy to go inside the liquor store, he stopped at a white convertible automobile and asked Tiffany Gangstee for a dollar.

Gangstee screamed at Hilton, which made Hilton's girlfriend Nicole Godfrey angry and everyone inside the Chevy got out of the Chevy. Godfrey threatened Gangstee and another passenger from the Chevy, Kenneth Smith, told Gangstee to call her boyfriend. Using her cell phone, Gangstee called her boyfriend, defendant, and he came out of a grocery store located in the same strip mall as the liquor store. Defendant was calm, everyone talked, and everyone parted ways.

Elliott then drove the Chevy toward the Chuck E. Cheese, as she did, she saw that Gangstee and defendant's white convertible was following her. She pulled to the side of the road and let the convertible pass her. She waited a few seconds after seeing the car turn right, and then drove the same path as the white convertible before driving into the Chuck E. Cheese parking lot.

After entering the Chuck E. Cheese parking lot, Godfrey saw the white convertible approach the Chevy on the driver's side. Hilton opened the rear driver's side door of the Chevy and began to "challenge" defendant and Gangstee. Hilton never got out of the Chevy, but he opened his door intending to fight defendant. Elliott also saw the white convertible on the driver's side of her car. She then watched Gangstee lean her seat back and saw defendant open fire on the Chevy with a handgun.

One bullet from defendant's gun grazed Elliott, leaving a burn mark. Another bullet went through the open door and hit Godfrey in her left knee. Three bullets hit Hilton, one in his left buttock and two in his left quadricep.

Defendant was subsequently arrested and charged with three counts of assault with a semi-automatic firearm (Pen. Code, § 245, subd. (b)), discharging a firearm at an occupied motor vehicle (Pen. Code, § 246), discharging a firearm from a motor vehicle (former Pen. Code, § 12034, subd. (d)), and willfully under circumstances likely to produce great bodily injury permitting a child to suffer and be inflicted with physical pain and mental suffering (Pen. Code, § 273a, subd. (a)). The People further alleged that defendant inflicted great bodily injury upon the assault victims (former Pen. Code, § 12022.7, subd. (a)) and personally used a firearm during the commission of his crimes (former Pen. Code, § 12022.5, subd. (a)(1)).

Defendant pled no contest to one count of assault with a semi-automatic firearm, admitted personally using a firearm, and admitting personally inflicting great bodily injury on his victim. The People moved to dismiss the remaining charges with a *Harvey*[1] waiver; the trial court took their motion under submission. The court also advised defendant that, as a result of his plea, defendant was facing up to 22 years in state prison.

At sentencing, defendant argued there were mitigating circumstances warranting imposition of the mitigated or middle term. The People and the probation department recommended imposition of the maximum term. After both sides submitted the matter, the trial court sentenced defendant to an aggregate term of 22 years in state prison: nine years for the assault conviction, 10 years for the firearm enhancement, and three years for the great bodily injury enhancement. The court dismissed the remaining charges and ordered defendant to pay various fines and fees. The court also awarded defendant a total of 655 days of presentence custody credits.

Defendant appeals without a certificate of probable cause.

---

[1] *People v. Harvey* (1979) 25 Cal.3d 754.

## II

Appointed counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal. (*Wende*, *supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing the opening brief. More than 30 days elapsed and we received no communication from defendant.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.

          MURRAY      , J.

We concur:

      BUTZ       , Acting P. J.

      DUARTE     , J.